UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILL PARKER, JR.,

    Plaintiff,

v.                                          Case No. 4:06-cv-128
                                                  Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).[1]  The court will also address plaintiff's "Motion for demand" (docket no. 17).

Plaintiff was born on May 26, 1957 and earned a GED (AR 48, 71, 380).[2] He served in the military for approximately eight years (1977-1980 and 1981-1986) and had previous employment as a delivery driver, fork lift driver, general laborer and factory worker (AR 48, 88, 347). Plaintiff identified his disabling conditions as severe migraine headaches, knee problems (swelling, popping and aching), anxiety attacks and heart problems (AR 81). As a result of these conditions, he cannot perform heavy lifting, does not like to be around loud noises, and cannot bend or stand for more than 30 minutes (AR 81).

---

[1] Plaintiff was represented by counsel during the administrative proceedings.

[2] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff filed a prior application for DIB on May 26, 1995, which was allowed at the hearing level with a disability onset date of February 22, 1995 (AR 14). The Commissioner terminated plaintiff's benefits in June 2000, because he was engaging in substantial gainful activity (AR 14). Plaintiff filed the present application for DIB on October 28, 2003, alleging a disability onset date of September 22, 2000 (AR 14, 48).

The record reflects that the administrative law judge (ALJ) held two separate hearings on this matter on February 2, 2006. The first hearing addressed whether plaintiff was entitled to DIB based upon his October 2003 application (AR 430-59). The second hearing addressed the issue of the agency's overpayment of benefits to both plaintiff ($39,163.00) and his son ($16,398.00) (AR 419-29).[3] The ALJ reviewed plaintiff's claims and entered a decision on March 27, 2006 regarding the DIB claim, and one on March 30, 2006, regarding the overpayment claim. The present suit involves only plaintiff's appeal from the ALJ's March 27, 2006 decision denying benefits from his October 2003 application.[4] This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a

---

[3] The ALJ framed this issue as follows, "whether or not there was an overpayment and whether or not [recovery] of the overpayment should be waived, specifically whether or not you were at fault at creating an overpayment, whether recovery would defeat the purpose of Title II against equity in good conscience or recovery of the overpayment would be against Social Security Ruling 404.509" (AR 419).

[4] The ALJ's March 30, 2006 decision, which addressed the overpayment issue, is the subject of a separate lawsuit in this court. *See Bill Parker, Jr. v. Commissioner of Social Security*, No. 4:06-cv-133 (W.D. Mich.) ("*Parker II*").

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

3

>impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff met the disability insured status requirements and has not engaged in substantial gainful activity since the alleged disability onset date (AR 23). Second, the ALJ found that plaintiff had severe impairments of post traumatic stress disorder, bipolar disorder, sleep apnea, high blood pressure, obesity, headaches, and post left leg and right clavicle fractures (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments

that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> to lift or carry a maximum of 20 pounds and 10 pounds frequently. In an eight-hour workday, the claimant can stand or walk for two hours and sit for six hours. He should never use ladders, scaffolds or ropes. The claimant can only occasionally use ramps or stairs, stoop, crouch, kneel or crawl. He should avoid concentrated exposure to extreme could. The claimant should avoid exposure to hazards. He can only do work involving 1, 2 or 3 step instructions and work that involves minimal interpersonal interaction, contact or discussion with co-workers. The claimant can only do work that involves minimal contact and directions from a supervisor and work requiring brief to no contact with the general public.

(AR 24). The ALJ found that although plaintiff's allegations regarding his limitations were not totally credible, plaintiff was unable to perform any of his past relevant work (AR 24).

At the fifth step, the ALJ found that plaintiff could perform a significant range of light work in the relevant region (Michigan), including inspector (1,800 jobs), hand packager (3,570 jobs), bench assembler (1,925 jobs), and records clerk (1,070 jobs) (AR 23-24). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 24).

### III. ANALYSIS

In this district, plaintiffs in Social Security appeals are required to provide a statement of errors, so that the court can address the specific matters at issue between the parties. Plaintiff did not comply with the requirements of the court's order directing filing of briefs, which ordered him to enumerate specific issues on appeal to this court, i.e.,

> Plaintiff's initial brief must contain a Statement of Errors, identifying and numbering each specific error of fact or law upon which plaintiff seeks reversal or remand.

5

*See* docket no. 10. Because plaintiff failed to set forth his claims as directed, or to include any argument in his briefs, the court must necessarily frame the issues on appeal. Plaintiff's cryptic briefs (docket nos. 11 and 14) have raised issues which relate both to his DIB claim and the overpayment issue addressed in *Parker II*. As previously discussed, the court will address only those issues that relate to plaintiff's DIB claim. The issues mentioned in petitioner's briefs essentially mirror the issues raised in his counsel's memorandum to the Appeals Council (AR 409-16).

After reviewing this memorandum and plaintiff's briefs, the court has gleaned five issues for review: the ALJ improperly evaluated the treating physicians' opinions; the ALJ performed an incomplete analysis of plaintiff's mental condition; the ALJ failed to properly analyze plaintiff's Veterans Affairs (VA) disability rating; the vocational expert (VE) was biased; and, plaintiff's "Motion for demand."

### A.     The ALJ improperly evaluated the treating physicians' opinions

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). But the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Plaintiff apparently contends that the ALJ failed to give appropriate weight to the opinions of David Vigor, M.D. (AR 337-43) and Elaine Tripi, Ph. D. (AR 286-92). Dr. Vigor examined plaintiff on June 16, 2005, and assigned him a global assessment of functioning (GAF) score of 41.[5] Dr. Tripi examined plaintiff on October 31, 2005, and assigned him a GAF score of 40. Plaintiff's GAF score of 40 lies within the 31 to 40 range, which indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood

---

[5] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

(e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *DSM-IV-TR* at p. 34. A GAF score of 41 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

The ALJ properly discounted these opinions. As an initial matter, the ALJ was not bound by the opinions expressed by Drs. Tripi and Vigor because they were examiners, not treaters (AR 17, 21). *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (the treating physician doctrine, which is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant, does not apply to a psychologist that examined the claimant only once).

In addition, the ALJ properly observed that a disability determination cannot be based solely on a GAF score. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *See also* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings"). To illustrate this point, the court notes that a <u>treating</u> psychiatrist at the VA, Dennis Bashara, M.D., assigned plaintiff a significantly higher GAF score of 55 from August 2005 through December 2005 (AR

8

322-27). This GAF scores lies within the 51 to 60 range, and indicates only "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR*, p. 34.

The ALJ further found that while plaintiff's lifestyle was not indicative of a person suffering from a disabling mental condition:

> While it is true that the claimant reported varying symptomology, he was commonly found to be alert and correctly oriented. The claimant's activities and lifestyle detract from suggestions that the claimant is incapable of sustaining all substantial gainful activity by virtue of a mental impairment. The claimant lives with his wife and two children, drives, vacuums, watches television [for four to five hours per day], is able to take care of his financial affairs, and goes grocery shopping. In 2002 and 2003 the claimant was taking college courses and attended aquatic therapy twice per week. The evidence does not suggest or establish that the claimant lacks suitable concentration, memory, adaptive or interpersonal skills for vocational involvement, nor that he is incapable of performing tasks that are simple, routine and repetitive in nature. In light of these circumstances, the aforementioned GAF scores are not adopted.

(AR 21) (citations omitted).

The ALJ's finding was further bolstered by the June 2003 report of a treating physician at the VA concerning plaintiff:

> The vet is independent in all activities of daily living. He prepares his own dinner and does light household chores like loading the dishwasher, vacuuming, mowing the lawn, driving and attending pool therapy two out of seven days a week [at] the Battle Creek VA. He takes care of his five year old son who will be attending school in the autumn 2003. He is able to engage in play with the young son.
>
> Last job driving fork lift till 2001 and then he stopped work. He was working full time at the time but also stated he was on disability from SSI. He finally resigned the job because his mother was dying in Mississippi from pancreatic cancer and he needed to travel out of town.

(AR 183).

I conclude that substantial evidence supports the ALJ's decision to reject the relatively low GAF scores assigned to plaintiff.

### B. The ALJ performed an incomplete analysis of plaintiff's mental condition

Next, plaintiff contends that the ALJ failed to properly address his mental impairments. The regulations provide a "special technique" for evaluating the severity of plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520a. This technique has been summarized as follows:

> [T]he ALJ is first supposed to evaluate whether plaintiff has any medically determinable mental impairments. 20 C.F.R. § 404.1520a(b). Where such an impairment is found, the ALJ is required to document the symptoms, signs, and laboratory findings that substantiate the presence of and rate the degree of functional limitation caused by any impairments. *Id.* Functional limitations are rated in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (citing section 12.00C of the Listing). These ratings are followed by a determination regarding the severity of any mental impairment. 20 C.F.R. § 404.1520a(d). Where severity is found, the ALJ must assess whether the mental impairment in question meets or is equivalent to any mental disorder in the Listing. *Id.* If a mental impairment is severe but fails to meet or equal any listing, the ALJ considers plaintiff's RFC. *Id.*
>
> The ALJ must incorporate any pertinent findings and conclusions based on the special technique in his written decision. 20 C.F.R. § 404.1520a(e)(2). The decision should also discuss what evidence the ALJ considered in reaching his conclusion about severity of any mental impairment as well as specific findings regarding the degree of limitation found in each of the four broad functional areas. *Id.*

*Stemple v. Astrue*, 475 F. Supp. 2d 527, 541 and fn. 34 (D. Md. 2007).

The record reflects that the ALJ followed this procedure. The ALJ found that plaintiff suffered from severe impairments of post traumatic stress disorder and bipolar disorder, and documented his treatment with Drs. Vigor, Beshara and Tripi (AR 17, 23). The ALJ also reviewed the state agency Mental Residual Functional Capacity Assessment and a Psychiatric Review

Technique Form ("PRTF") which identified a "personality disorder" under Listing 12.08 (AR 20, 266). Based on his review, the ALJ found that plaintiff's functional limitations consisted of only mild restrictions of his activities of daily living, moderate limitations in his ability to engage in social functioning, mild deficiencies of concentration, persistence and pace, and no evidence that he experienced an episode of decompensation (AR 20). The ALJ also noted that plaintiff had no psychiatric hospitalizations (AR 20). In summary, the ALJ found that plaintiff did not meet the "B" or "C" criteria under Listing 12.08 (AR 20, 266, 269-70).

The ALJ incorporated these limitations in his RFC determination, which limited plaintiff to work:

> involving 1, 2 or 3 step instructions and work that involves minimal interpersonal interaction, contact or discussion with co-workers. The claimant can only do work that involves minimal contact and directions from a supervisor and work requiring brief to no contact with the general public.

(AR 24). While plaintiff may disagree with the ALJ's conclusion, the record reflects that the ALJ performed a complete analysis of plaintiff's mental condition as required under the regulations. Accordingly, this alleged error should be denied.

### C. The ALJ failed to properly analyze plaintiff's VA disability rating.

Plaintiff also contends the ALJ failed to properly evaluate his VA disability rating.

Under the regulations, the ALJ is not bound to accept the disability ratings made by the VA. Specifically, 20 C.F.R. § 404.1504 provides in pertinent part that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

While a VA disability rating is not binding on the ALJ, it is entitled to some weight. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ"); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984) (noting that the record contained a Veterans Administration insurance disability award marked "total disability").

The ALJ referred to the VA rating of 60% disability as of July 30, 2004, and noted that plaintiff received compensation for chronic headaches associated with hypertension, mood instability and major depression complicated by migraines, hypertension, and left inguinal herniorrhaphy scar associated with left inguinal hernia (AR 17, 283-85). It appears that the ALJ took this rating into account in the RFC determination, which placed limitations on plaintiff's physical and mental work activities (AR 24). Furthermore, even if the ALJ had adopted the VA's 60% disability rating as his own, this rating does not meet the requirements to find plaintiff disabled for purposes of DIB. Nothing in the VA records indicate that plaintiff had a condition of total disability that lasted, or could be expected to last, for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505. Thus, the ALJ did not err in evaluating plaintiff's VA disability rating.

### D.     The vocational expert (VE) was biased

Next, in his reply brief, plaintiff contends that the VE was biased because she was paid by the Social Security Administration. Plaintiff's contention is without merit. The regulations explicitly authorize the Commissioner to "use the services of a vocational expert or other specialist" to determine whether a claimant's work skills can be used in other work. 20 C.F.R. § 404.1566(e).

*See, e.g., Nichols v. Commissioner of Social Security Administration*, 260 F.Supp.2d 1057, 1070 (D.Kan.,2003) ("[t]he mere fact that this witness was presented by the Commissioner and received compensation for his services is not enough for this Court to infer that Plaintiff was deprived of a fair and impartial hearing").

### E. Plaintiff's "Motion to demand"

Finally, plaintiff has submitted a document entitled "Motion of demand" (docket no. 17), which includes 68 pages of additional documents and which seeks punitive damages. Plaintiff's motion for additional relief is without merit. Section 405(g) authorizes the court to enter a judgment "affirming, modifying, or reversing" the Commissioner's decision. In this district, the court decides § 405(g) appeals based upon the matters contained in the administrative record and the arguments raised in the parties' briefs. *See* Order (Jan. 16, 2007). Plaintiff's motion asserts claims that are beyond the scope of this administrative appeal. While plaintiff can seek an award of past social security benefits in this appeal, he cannot obtain compensatory or punitive damages arising from the denial of social security benefits. *See Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) (the Social Security Act makes no provision for remedies in money damages against officials responsible for the denial of benefits). Accordingly, plaintiff's "Motion of demand" should be denied.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be **AFFIRMED** and that plaintiff's "Motion of demand" (docket no. 17) be **DENIED**.

Dated: January 7, 2008                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).